UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - x

                                            :

UNITED STATES OF AMERICA

                                            :

    - v. -                                      SEALED INDICTMENT

                                            :

JOO HYUN BAHN,                                  16 Cr. ____
    a/k/a "Dennis Bahn,"                    :
BAN KI SANG, and
MALCOLM HARRIS,                             CRIM  831.

            Defendants.                     :

- - - - - - - - - - - - - - - - - - - x

**ORIGINAL** FILED

#### Overview

1.    From in or about March 2013 through in or about
May 2015, JOO HYUN BAHN, a/k/a "Dennis Bahn" ("JOO HYUN BAHN" or
"BAHN"), the defendant, and his father, BAN KI SANG ("BAN KI
SANG" or "BAN"), the defendant, engaged in an international
conspiracy to bribe a foreign official ("Foreign Official-1") of
a country in the Middle East ("Country-1") in connection with
the attempted $800 million sale of a building complex in Vietnam
known as Landmark 72.

2.    At all times relevant to the Indictment, Keangnam
Enterprises Co., Ltd. ("Keangnam") was a South Korean
construction company that built and owned Landmark 72, and BAN
KI SANG, the defendant, was a senior executive at Keangnam.   In
2013 Keangnam was experiencing a liquidity crisis.   The debts
owed to Keangnam's creditors were maturing and the company

needed to raise capital.  Keangnam turned to JOO HYUN BAHN, a/k/a "Dennis Bahn," the defendant, who was a commercial real estate broker in Manhattan, to secure an investor for Landmark 72.  If BAHN were successful, he stood to earn a commission of at least five million dollars.

3.     Instead of obtaining financing through legitimate channels, JOO HYUN BAHN and BAN KI SANG, the defendants, engaged in a corrupt scheme to pay bribes to Foreign Official-1, through MALCOLM HARRIS, the defendant, who held himself out as an agent of Foreign Official-1, to induce Foreign Official-1 to use his influence to convince Country-1's sovereign wealth fund (the "Fund") to acquire Landmark 72.  In or about April 2014, based on communications with HARRIS, BAHN and BAN agreed to pay, through HARRIS, a \$500,000 upfront bribe and a \$2,000,000 bribe upon the close of the sale of Landmark 72 to Foreign Official-1 on behalf of Keangnam.  Unbeknownst to BAHN or BAN, however, HARRIS did not have the claimed relationship with Foreign Official-1 and did not intend to pay the bribe money to Foreign Official-1.  Instead, HARRIS simply stole the \$500,000 upfront bribe paid by BAHN and BAN, which HARRIS then spent on lavish personal expenses.

4.     Over the next year, as the Landmark 72 deal showed no signs of actual progress, Keangnam's liquidity crisis worsened.  Believing that the upfront bribe that JOO HYUN BAHN,

2

the defendant, had paid would eventually bear fruit and not

wanting to lose a potential multi-million-dollar commission,

BAHN engaged in a fraudulent scheme to trick Keangnam and its

creditors into believing the Fund was close to acquiring

Landmark 72. In furtherance of this scheme, BAHN repeatedly

lied to Keangnam and its creditors about the status of the deal,

knowing that Keangnam and its creditors would rely upon the

misrepresentations. BAHN forged emails from Foreign Official-1

and other documents to make the sale of Landmark 72 appear

imminent. Ultimately, when the deal with the Fund failed to

materialize, Keangnam was forced to enter court receivership in

South Korea.

## Relevant Persons and Entities

5. At all times relevant to this Indictment, JOO

HYUN BAHN, the defendant, was a national of South Korea and a

lawful permanent resident of the United States residing in New

Jersey. As such, BAHN was a "domestic concern" as that term is

used in the Foreign Corrupt Practices Act ("FCPA"), Title 15,

United States Code, Section 78dd-2(h)(1). BAHN worked as a

broker at two commercial real estate brokerage firms ("Firm-1"

and "Firm-2") at offices located in Manhattan. Specifically,

BAHN worked at Firm-1 between in or about February 2013 and

March 2014, and at Firm-2 between in or about March 2014 and May

2015. BAHN is the son of BAN KI SANG, the defendant.

3

6.     At all times relevant to this Indictment, BAN KI SANG, the defendant, was a national and resident of South Korea. BAN was employed by and served as a senior advisor to Keangnam. BAN is the father of JOO HYUN BAHN, the defendant.

7.     At all times relevant to this Indictment, MALCOLM HARRIS, the defendant, was a national of the United States who previously resided in Manhattan and Brooklyn, New York.  HARRIS is a self-described arts and fashion consultant and blogger.

8.     At all times relevant to this Indictment, "CC-1," a co-conspirator not named as a defendant herein, but whose identity is known to the Grand Jury, was a national of South Korea and a lawful permanent resident of the United States.  As such, CC-1 was a "domestic concern" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).  CC-1 worked with JOO HYUN BAHN, the defendant, at Firm-1 and Firm-2 in Manhattan.

9.     At all times relevant to this Indictment, Foreign Official-1 was an officer and employee of the government of Country-1, and a department, agency, and instrumentality thereof, and a person acting in an official capacity for and on behalf of such government, department, agency, and instrumentality.  As such, Foreign Official-1 was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

4

10. At all times relevant to this Indictment, the Fund was a sovereign wealth fund controlled by the government of Country-1. As such, the Fund was an "instrumentality" of a foreign government as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2.

## Background on Landmark 72

11. In or about 2012, Keangnam completed the construction of a 72-story commercial office building known as the Keangnam Hanoi Landmark Tower and two 48-story residential buildings in Hanoi, Vietnam (collectively, "Landmark 72"). At the time of its construction, the Landmark 72 office tower was the tallest building in the Indochina Peninsula. The construction of Landmark 72 cost more than $1 billion, which Keangnam financed, in part, through loans issued by South Korean banks. At all times relevant to this Indictment, Keangnam owned Landmark 72.

12. In early 2013, Keangnam was experiencing liquidity problems. Faced with maturing debts owed to its creditors, including those incurred in the construction of Landmark 72, Keangnam sought to refinance or sell Landmark 72 to an investor for approximately $800 million.

13. In or about February 2013, BAN KI SANG, the defendant, arranged for Keangnam to retain his son, JOO HYUN BAHN, the defendant, to broker a refinancing of Landmark 72 on

5

behalf of Keangnam.  At the time, BAHN was working as a real
estate broker at Firm-1 in Manhattan.  BAN arranged for BAHN to
broker the refinancing despite the fact that BAHN had no prior
experience brokering a deal of the size or complexity of
Landmark 72.  If BAHN were successful, he stood to earn a multi-
million dollar-commission for himself and Firm-1.

    14.  In or about March 2013, JOO HYUN BAHN, the
defendant, was introduced to MALCOLM HARRIS, the defendant,
through a mutual acquaintance in Manhattan.  BAHN and HARRIS
began discussing potential business opportunities, including
Landmark 72.  HARRIS claimed he could assist BAHN with the
refinance or sale of Landmark 72 through HARRIS's personal
connections, which HARRIS represented as including members of
the royal family of Country-1.  In exchange for helping BAHN
secure an investor for Landmark 72, BAHN promised to pay HARRIS
a "cut" of the multi-million-dollar commission that BAHN
expected to earn from the sale.

## The FCPA Bribery Scheme

    15.  Beginning in or about September 2013, JOO HYUN
BAHN and BAN KI SANG, the defendants, attempted to pay bribes,
and to take advantage of both the purported personal connections
of MALCOLM HARRIS, the defendant, and those of BAHN and BAN's
own family, in order to convince government officials of
Country-1 to have the Fund acquire Landmark 72, rather than

6

directly pitching Landmark 72 to the Fund through legitimate channels.

16.  For example, in or about September 2013, JOO HYUN BAHN, the defendant, with the knowledge and consent of BAN KI SANG, the defendant, attempted to arrange a meeting with the Head of State of Country-1 (the "Head of State") in connection with the Head of State's visit to New York for the United Nations General Assembly.  BAHN intended to use this meeting as a forum to pitch the Landmark 72 deal directly to the Head of State.

17.  In connection with the Head of State's visit, on or about September 18, 2013, JOO HYUN BAHN, the defendant, sent an email to his supervisors at Firm-1 seeking authorization to spend $28,000 on "gifts" for the Head of State at this meeting. This $28,000 was to come out of a $100,000 deposit Keangnam had sent to Firm-1 to cover brokerage expenses.  Attached to the email was a letter signed by BAN KI SANG, the defendant, on behalf of Keangnam, authorizing Firm-1 to spend $28,000 on "gift purchases."  BAHN's supervisors at Firm-1 refused to authorize BAHN's request to spend $28,000 on gifts for the Head of State, and sent a letter to BAN recommending that he "discuss any proposed marketing expenses or gift purchases related to the [Fund] with [Keangnam's] legal counsel."

7

18. In response to this letter, on or about September 24, 2013, JOO HYUN BAHN, the defendant, sent an email to a supervisor at Firm-1, in which BAHN tried to use his family's prominence to authorize the payment of the "gifts" for the Head of State. BAHN's email stated, in part: "I sent an email to [a senior-level supervisor] specifically not to send this letter until I talk to my father [BAN KI SANG, the defendant] . . . . As I mentioned . . . IF this deal gets done, it gets done purely based on our family's reputation with [the Head of State]." Later, on or about September 25, 2013, BAHN sent another email to his supervisors at Firm-1 in which he reported having discussed Firm-1's unwillingness to pay for gifts for the Head of State with his father, BAN. BAHN's email stated, in part: "[O]ur client [Keangnam] was visibly upset due to our 'lack of risk taking' . . . . Our client [Keangnam], especially, my father [BAN] is upset on the fact that our family is risking our family's reputation to make the deal work while [Firm-1] is sitting on the sideline . . . ."

19. In addition to attempting to arrange a meeting with the Head of State of Country-1, on or about September 24, 2013, JOO HYUN BAHN, the defendant, attempted to deliver a letter to the Head of State concerning the proposed Landmark 72 deal with the Fund while the Head of State was still in New York for the United Nations General Assembly. This letter, drafted

8

by BAHN, offered his family's assurances as to the "stability and profitability" of Landmark 72. BAHN asked MALCOLM HARRIS, the defendant, to deliver this letter to the Head of State. On or about September 25, 2013, HARRIS told BAHN he had delivered the letter. BAHN's efforts to pitch the Landmark 72 deal directly to the Head of State, however, were ultimately unsuccessful.

20. In or about late 2013 and early 2014, having failed in his initial efforts to convince the Fund to acquire Landmark 72 by paying bribes and trading on the prominence of his family, JOO HYUN BAHN, the defendant, exchanged multiple emails and text messages with MALCOLM HARRIS, the defendant, concerning Landmark 72. On several occasions, BAHN told HARRIS that he was "getting pressure" from his client, Keangnam, regarding the deal and that Keangnam was experiencing "severe liquidity issues." HARRIS repeatedly reassured BAHN that he was in touch with government officials of Country-1 concerning Landmark 72 and urged BAHN to be patient.

21. On or about February 17, 2014, JOO HYUN BAHN and MALCOLM HARRIS, the defendants, exchanged text messages concerning Landmark 72. In the text messages, HARRIS claimed that he was working with a new contact at the Fund, namely Foreign Official-1. In the text messages, HARRIS told BAHN that Foreign Official-1 was in a position to influence the Fund's

9

decision to acquire Landmark 72, but that Foreign Official-1
would require a bribe in order to do so.  The text messages
stated, in part:

> HARRIS:   Dennis - I've been working with my new
> . . . contact [in Country-1] for the
> past few days . . . and between us
> . . . these guys are all alike . . . at
> least [HARRIS's former purported
> contact in Country-1] was a little more
> subtle with his 'pay-for-play' approach
> . . . the new guy that's been assigned
> to the 'calendar' has pretty much
> spelled it out . . . that these slots
> have a price . . . .

> BAHN:     Hi Malcolm.  Thanks for the feedback.
> Please tell him there is a $13,000,000
> fee we can collect if this deal closes
> with [the Fund] and we are happy to
> share the fee with him as long as he
> gets us in front of the [Head of State]
> and help us get his approval.

> HARRIS:   I've been pushing this angle . . .
> trying not to get too frustrated with
> this new guy as he truly is holding all
> of the cards . . .  I'm possibly
> splitting an appointment 'gift' (is
> what they call it) with another client
> . . . to get the ball rolling on their
> project . . . .

> BAHN:     Ok Malcolm.  Whatever works we will
> accommodate.  If some sort of upfront
> payment is needed to secure a meeting
> with the [Head of State] and his
> approval please ask him and let me know
> and I will ask my client how much we
> can spend on your new contact.

22.  On or about February 25, 2014, MALCOLM HARRIS,
and JOO HYUN BAHN, the defendants, exchanged text messages about

10

the bribe payment that HARRIS represented was sought by Foreign Official-1. HARRIS told BAHN that the code word for the bribe payment to Foreign Official-1 was "roses." BAHN assured HARRIS that Keangnam would "accommodate" the bribe payment in order to close the Landmark 72 deal.

23. In or about March 2014, JOO HYUN BAHN, the defendant, stopped working at Firm-1 and started working at Firm-2 in Manhattan. In connection with his employment at Firm-2, on or about March 6, 2014, BAHN signed Firm-2's "FCPA Prevention of Bribery Policy," which, among other things, "prohibits any of its Supervised Persons [including BAHN] from making any corrupt payment to improperly obtain or retain business anywhere in the world." While employed by Firm-2, BAHN continued to try to broker the sale of Landmark 72 to the Fund.

24. On or about March 7, 2014, MALCOLM HARRIS, the defendant, forwarded to JOO HYUN BAHN, the defendant, an email which purported to be sent by Foreign Official-1, but which was in fact written by HARRIS, stating that Foreign Official-1 would require an upfront payment of $250,000 and a payment of $750,000 after the Landmark 72 deal was approved by the Fund. Later that day, BAHN forwarded this email purporting to be from Foreign Official-1 to BAN KI SANG, the defendant. Above the forwarded email, BAHN wrote that Foreign Official-1 could assist Keangnam

11

with the Landmark 72 deal, but that Keangnam would have to pay
"bribes" to obtain such assistance.[1]

        25.  On or about March 11, 2014, JOO HYUN BAHN, the
defendant, sent MALCOLM HARRIS, the defendant, an email stating
that if BAHN and BAN KI SANG, the defendant, "push[ed]" Keangnam
to pay the proposed bribes to Foreign Official-1, the company
would do so.  BAHN expressed concerns, however, that if the
Landmark 72 deal ultimately was not approved by the Fund, both
he and BAN would be "put in a sticky situation (almost close to
fraud)" and that in light of their family's prominence, "any
negative press linking [BAHN and BAN] to anything" would be
"bad."

        26.  On or about March 17, 2014, JOO HYUN BAHN, the
defendant, forwarded an email purportedly from Foreign Official-
1, but which appears to have been written by BAHN, to BAN KI
SANG, the defendant.  The forwarded email proposed that the Fund
acquire Landmark 72 for $700 million.  The email purportedly
from Foreign Official-1 further stated: "Once [the] requested
roses are received I will push this deal for approval."  Above
the forwarded email, BAHN wrote to his father that in order for

[1]     The emails exchanged between BAHN and BAN and other
individuals at Keangnam are substantially in Korean.  To the
extent such emails are quoted or paraphrased in this Indictment,
the quotations and paraphrases are English translations of the
original Korean.

                               12

the deal with the Fund to proceed, a "down payment" from Keangnam was required. BAHN told BAN that Keangnam either had to "give him [i.e., Foreign Official-1] the money or forget about the whole thing."

27. On or about April 1, 2014, JOO HYUN BAHN, the defendant, sent an email to MALCOLM HARRIS, the defendant, which stated that BAHN "had a very long conversation with Keangnam regarding Landmark 72" the night before and that Keangnam's creditors were "not happy" with the purported $700 million offer from the Fund. BAHN told HARRIS that if the Fund increased the purchase price to $800 million, Keangnam would be willing to increase the upfront bribe payment to Foreign Official-1 from $250,000 to $500,000 and pay $2,000,000 to Foreign Official-1 after the deal closed.

28. On or about April 1, 2014, BAN KI SANG, the defendant, sent an email to JOO HYUN BAHN, the defendant, concerning the proposed structure of the bribe payments, in which BAN stated that he was "trying to push it through using any means possible," but that because Keangnam was "not [his] company," BAN was "pushing" another Keangnam executive. In his email, BAN also asked BAHN: "If we were to send a bonus, are there any instructions?"

29. On or about April 3, 2014, JOO HYUN BAHN, the defendant, sent an email to MALCOLM HARRIS, the defendant,

13

stating that BAHN had received "approval" from Keangnam for the proposed $800 million offer for Landmark 72 and the "$500,000 upfront" and "$2,000,000 after closing" bribe payments for Foreign Official-1. BAHN explained to HARRIS that the funds used to pay the bribe to Foreign Official-1 would, however, have to be disguised as a legitimate payment from Keangnam.

30.     Around the time that JOO HYUN BAHN and BAN KI SANG, the defendants, were negotiating the bribe payments for Foreign Official-1, BAHN caused Keangnam and Firm-2 to enter into a written agreement pursuant to which Firm-2 agreed to broker the sale of Landmark 72 in exchange for a percentage of the sale price. In addition, Keangnam agreed to pay an advance "deposit" of $500,000 to Firm-2, which would be credited against Firm-2's future commission. Under the terms of his employment with Firm-2, BAHN was entitled to approximately 45 percent of any commission earned by Firm-2 from the sale of Landmark 72. As such, if the Fund acquired Landmark 72 for $800 million, BAHN stood to earn a multi-million-dollar commission.

31.     On or about April 15, 2014 and April 16, 2014, JOO HYUN BAHN and BAN KI SANG, the defendants, caused Keangnam to send two wire transfers in the amounts of $410,000 and $90,000, respectively, from Keangnam's bank account in South Korea to Firm-2's bank account in Manhattan. Using the $500,000 transfer from Keangnam to Firm-2 as collateral, BAHN and CC-1,

14

BAHN's co-worker at Firm-2, then arranged to borrow $500,000 from CC-1's business partner in New York to pay the bribe to Foreign Official-1. Specifically, on or about April 16, 2014, BAHN and CC-1 caused CC-1's business partner to write a check for $500,000 to "Muse Creative Consulting, LLC," a company controlled by MALCOLM HARRIS, the defendant. The check was subsequently delivered to HARRIS so that he could deposit it and pay the upfront bribe to Foreign Official-1 on behalf of BAHN, BAN, and Keangnam.

32.    On or about April 17, 2014, JOO HYUN BAHN, the defendant, sent an email to MALCOLM HARRIS, the defendant, in which BAHN explained that he had disguised the $500,000 transferred by Keangnam to Firm-2 as a "retainer" in order to get the necessary approvals for the transfer from Keangnam's creditors since they could not disclose that the money was for bribery. BAHN further stated, in part:

> Also, since the $500,000 is "illegal" to [a] certain extent, my father [BAN KI SANG, the defendant] and myself cannot be involved directly due to our family . . . . Thus, we had to devise a plan to make everything look "official/legal" on paper and simultaneously not get [Keangnam] directly involved with [the Fund] regarding the "roses" matter.  On paper, Keangnam has retained [Firm-2] to sell Landmark 72 to [the Fund] and has paid [Firm-2] $500,000 as a retainer to start the job.  But nobody knows the dealings under the table.

15

COUNT ONE
(Conspiracy to Violate the Foreign Corrupt Practices Act)

The Grand Jury charges:

33.    The allegations set forth in paragraphs 1 through 32 of this Indictment are repeated and realleged as if fully set forth herein.

34.    From in or about March 2013 through in or about May 2015, in the Southern District of New York and elsewhere, JOO HYUN BAHN and BAN KI SANG, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, to violate the FCPA, Title 15, United States Code, Section 78dd-2.

35.    It was a part and object of the conspiracy that JOO HYUN BAHN and BAN KI SANG, the defendants, and others known and unknown, being a domestic concern and aiding and abetting a domestic concern, would and did willfully make use of the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, and offer, gift, promise to give, and authorization of the giving of anything of value to a foreign official, and to a person, while knowing that all and a portion of such money and thing of value would be and had been offered, given, and promised, directly and indirectly,

16

to a foreign official, for purposes of: (i) influencing acts and decisions of such foreign official in that foreign official's official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such foreign official; (iii) securing any improper advantage; and (iv) inducing such foreign official to use that foreign official's influence with a foreign government and instrumentalities thereof to affect and influence acts and decisions of such government and instrumentalities, in order to assist BAHN and CC-1, in obtaining and retaining business for and with, and directing business to, BAHN, BAN, Keangnam and others.

### Overt Acts

36. In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a. On or about March 7, 2014, JOO HYUN BAHN, the defendant, placed a telephone call from Manhattan to MALCOLM HARRIS, the defendant, to discuss the payment of bribes to Foreign Official-1.

b. On or about March 7, 2014, JOO HYUN BAHN, the defendant, sent an email to BAN KI SANG, the defendant, which stated that Foreign Official-1 could assist Keangnam in

17

its efforts to convince the Fund to acquire Landmark 72, but that Keangnam would have to pay "bribes" to obtain Foreign Official-1's assistance.

          c.    On or about April 1, 2014, BAN sent an email to BAHN which stated that BAN was pushing to obtain approval from Keangnam to pay the necessary bribes to Foreign Official-1 and asked BAHN if there were any instructions as to how the bribes should be paid to Foreign Official-1.

          d.    On or about April 15, 2014, BAHN and BAN caused Keangnam to send a wire transfer in the amount of $410,000 from Keangnam's bank account in South Korea to Firm-2's bank account in Manhattan.

          e.    On or about April 16, 2014, BAHN and CC-1 caused CC-1's business partner in New York to write a check for $500,000 to Muse Creative Consulting, LLC, which was subsequently deposited into a bank account in Manhattan.

          (Title 18, United States Code, Section 371.)

### COUNTS TWO THROUGH FOUR

(Violations of the Foreign Corrupt Practices Act)

          The Grand Jury further charges:

          37.    The allegations set forth in paragraphs 1 through 32 and 36 of this Indictment are repeated and realleged as if fully set forth herein.

38. On or about the dates set forth below, in the Southern District of New York and elsewhere, JOO HYUN BAHN and BAN KI SANG, the defendants, being a domestic concern and an officer, director, employee, agent, and shareholder of a domestic concern, and by aiding and abetting a domestic concern, willfully used and caused to be used the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of money, and offer, gift, promise to give, and authorization of the giving of anything of value to a foreign official, and to a person, while knowing that all and a portion of such money and thing of value would be and had been offered, given, and promised, directly and indirectly, to a foreign official, for purposes of: (i) influencing acts and decisions of such foreign official in that foreign official's official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such foreign official; (iii) securing any improper advantage; and (iv) inducing such foreign official to use that foreign official's influence with a foreign government and instrumentalities thereof to affect and influence acts and decisions of such government and instrumentalities, in order to assist BAHN and CC-1 in obtaining and retaining business for and

19

with, and directing business to, BAHN, BAN, Keangnam, and others

as follows:

| Count | Date | Use of Instrumentality of Interstate Commerce |
|-------|------|-----------------------------------------------|
| Two | April 15, 2014 | A wire transfer of $410,000 from Keangnam's bank account in South Korea to Firm-2's bank account in Manhattan. |
| Three | April 16, 2014 | A wire transfer of $90,000 from Keangnam's bank account in South Korea to Firm-2's bank account in Manhattan. |
| Four | April 16, 2014 | Issuance of a check in the amount of $500,000 to Muse Creative Consulting, LLC, which was deposited into a bank account in Manhattan and cleared through a bank in Virginia. |

(Title 15, United States Code, Section 78dd-2; and
Title 18, United States Code, Section 2)

COUNT FIVE
(Money Laundering Conspiracy)

The Grand Jury further charges:

39.    The allegations set forth in paragraphs 1 through

32 and 36 of this Indictment are repeated and realleged as if

fully set forth herein.

40.    In or about April 2014, in the Southern District

of New York and elsewhere, JOO HYUN BAHN and BAN KI SANG, the

defendants, and others known and unknown, intentionally and

knowingly did combine, conspire, confederate, and agree together

and with each other to commit money laundering, in violation of

Title 18, United States Code, Section 1956(a)(2)(A).

20

41.    It was a part and an object of the conspiracy
that JOO HYUN BAHN and BAN KI SANG, the defendants, and others
known and unknown, would and did knowingly transport, transmit,
and transfer, and attempt to transport, transmit, and transfer a
monetary instrument and funds from a place in the United States
to and through a place outside the United States, and to a place
in the United States from and through a place outside the United
States, with the intent to promote the carrying on of specified
unlawful activity, to wit, a scheme to bribe Foreign Official-1,
in violation of the FCPA, Title 15, United States Code, Section
78dd-2.

(Title 18, United States Code, Section 1956(h).)

COUNT SIX
(Money Laundering)

The Grand Jury further charges:

42.    The allegations set forth in paragraphs 1 through
32 and 36 of this Indictment are repeated and realleged as if
fully set forth herein.

43.    In or about April 2014, in the Southern District
of New York and elsewhere, JOO HYUN BAHN and BAN KI SANG, the
defendants, did knowingly transport, transmit, and transfer, and
attempt to transport, transmit, and transfer a monetary
instrument and funds from a place in the United States to and
through a place outside the United States and to a place in the

21

United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, to wit, a scheme to bribe Foreign Official-1, in violation of the FCPA, Title 15, United States Code, Section 78dd-2.

(Title 18, United States Code, Sections 1956(a)(2)(A) and 2.)

## HARRIS's Scheme to Defraud

44.    From in or about March 2013 through in or about May 2015, MALCOLM HARRIS, the defendant, orchestrated a fraudulent scheme to steal at least $500,000 in bribe money that JOO HYUN BAHN and BAN KI SANG, the defendants, attempted to pay to Foreign Official-1 in connection with the Landmark 72 deal. In furtherance of this scheme, HARRIS drafted and sent emails and text messages containing numerous misrepresentations to BAHN, some of which BAHN forwarded to his client, Keangnam.    In addition, HARRIS forged numerous emails bearing Foreign Official-1's name, including the emails purportedly sent from Foreign Official-1 to HARRIS described above, which forgeries HARRIS forwarded to BAHN.    In his emails and text messages, HARRIS misrepresented, among other things, that:

a.    HARRIS had engaged in direct personal communications with Foreign Official-1 and other government officials of Country-1, including the Head of State of Country-1, regarding Landmark 72;

22

b.      Foreign Official-1 had assisted HARRIS in closing other multi-million-dollar deals with the Fund in exchange for bribes; and

c.      Foreign Official-1 would assist Keangnam in its efforts to convince the Fund to acquire Landmark 72 for $800 million if Keangnam paid Foreign Official-1 $2.5 million in bribes.

45.     As MALCOLM HARRIS, the defendant, well knew, none of these claims was true.  In particular, HARRIS never had any communications with Foreign Official-1 and never paid any bribes to Foreign Official-1.  Rather, HARRIS simply stole the $500,000 in bribe money and spent it on lavish personal expenses.

46.     Specifically, on or about April 17, 2014, MALCOLM HARRIS, the defendant, caused the $500,000 check written by CC-1's business partner to be deposited into the bank account of HARRIS's company, Muse Creative Consulting, LLC, at a bank in Manhattan.  Thereafter, HARRIS spent the fraudulent proceeds on various personal expenses, including airfare and luxury hotels, meals at expensive restaurants, furniture, and rent for an apartment in Manhattan and for a six-month lease of a luxury penthouse condominium in Williamsburg, Brooklyn.  Several of these transactions conducted by HARRIS were in amounts that exceeded $10,000 each.

23

47.    Through at least May 2015, MALCOLM HARRIS, the
defendant, continued to make misrepresentations and created
additional forged emails bearing the name of Foreign Official-1,
which HARRIS sent to JOO HYUN BAHN, the defendant, in order to
prevent detection of HARRIS's fraudulent scheme.  For example,
on or about May 22, 2014, HARRIS forwarded an email to BAHN that
HARRIS had purportedly received from Foreign Official-1, but was
in reality another forgery, reassuring HARRIS of the Fund's
purported commitment to purchase Landmark 72 and requesting
continued patience.  Similarly, in or about September 2014,
HARRIS sent BAHN a forged "Letter of Intent" concerning Landmark
72 that HARRIS falsely represented had been sent to him by
Foreign Official-1.

## COUNT SEVEN
(Wire Fraud)

The Grand Jury further charges:

48.    The allegations set forth in paragraphs 1 through
32, 36, and 44 through 47 of this Indictment are repeated and
realleged as if fully set forth herein.

49.    From in or about March 2013 through in or about
May 2015, in the Southern District of New York and elsewhere,
MALCOLM HARRIS, the defendant, willfully and knowingly, having
devised and intending to devise a scheme and artifice to
defraud, and for obtaining money and property by means of false

24

and fraudulent pretenses, representations and promises, for the

purpose of executing such scheme and artifice, transmitted and

caused to be transmitted by means of wire communication in

interstate and foreign commerce writings, signs, signals,

pictures, and sounds, to wit, HARRIS used and caused to be used

interstate wires to deceive JOO HYUN BAHN and BAN KI SANG, the

defendants, into causing approximately $500,000 to be

transferred to HARRIS for the purported purpose of paying a

bribe to Foreign Official-1.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT EIGHT
### (Aggravated Identity Theft)

The Grand Jury further charges:

50.   The allegations set forth in paragraphs 1 through

32, 36, and 44 through 47 of this Indictment are repeated and

realleged as if fully set forth herein.

51.   From in or about March 2013 through in or about

May 2015, in the Southern District of New York and elsewhere,

MALCOLM HARRIS, the defendant, willfully and knowingly did

transfer, possess, and use, without lawful authority, a means of

identification of another person, during and in relation to a

felony violation enumerated in Title 18, United States Code,

Section 1028A(c), to wit, HARRIS transferred, possessed and

used, without lawful authority, a means of identification,

25

including the name, of Foreign Official-1 on multiple occasions
in furtherance of the wire fraud scheme charged in Count Seven
of this Indictment.

(Title 18, United States Code, Sections 1028A(a)(1),
1028A(c)(5) and 2.)

## COUNT NINE
(Money Laundering)

The Grand Jury further charges:

52.  The allegations set forth in paragraphs 1 through
32, 36, and 44 through 47 of this Indictment are repeated and
realleged as if fully set forth herein.

53.  From in or about April 2014 through in or about
May 2015, in the Southern District of New York and elsewhere,
MALCOLM HARRIS, the defendant, in an offense taking place in the
United States, knowingly and willfully engaged in and attempted
to engage in monetary transactions in criminally derived
property that were of a value greater than $10,000, to wit,
payments by cashier's check and wire transfer of funds in excess
of $10,000 from a bank account under HARRIS's control, such
property having been derived from a specified unlawful activity,
to wit, proceeds from the wire fraud scheme charged in Count
Seven of this Indictment.

(Title 18, United States Code, Sections 1957(a) and 2).

26

## BAHN's Scheme to Defraud

54.   From in or about March 2013 through in or about May 2015, JOO HYUN BAHN, the defendant, engaged in a fraudulent scheme against Keangnam and its creditors, to retain the exclusive right granted to BAHN by his client, Keangnam, to broker the refinancing or sale of Landmark 72 in exchange for a multi-million-dollar commission, and to steal a portion of the $500,000 Keangnam sent to Colliers in connection with the bribe payment for Foreign Official-1.

55.   In furtherance of the scheme to defraud Keangnam and its creditors, JOO HYUN BAHN, the defendant, made numerous misrepresentations in emails that BAHN sent to Keangnam executives.  Among other things, BAHN falsely claimed that he had telephone conversations with Foreign Official-1 about Landmark 72, which never occurred, and that BAHN had received emails and documents relating to Landmark 72 from Foreign Official-1 and other individuals, which were never drafted or sent by those parties.  As BAHN was well aware, Keangnam forwarded many of the communications from BAHN containing these misrepresentations to its creditors, who stood to lose money if Keangnam failed to sell Landmark 72.

56.   As a result of the fraudulent scheme orchestrated by JOO HYUN BAHN, the defendant, Keangnam was deprived of information in connection with its decision-making concerning

27

the company's finances, its efforts to sell Landmark 72, and its dealings with its creditors. For example, because BAHN falsely represented that the deal with the Fund was progressing, Keangnam did not explore other options for disposing of Landmark 72, which ultimately led to Keangnam's application for court receivership in South Korea.

57. As part of the scheme to defraud Keangnam and its creditors, JOO HYUN BAHN, the defendant, also made misrepresentations to Keangnam and Firm-2 in order to obtain approximately $225,000 of the $500,000 that Keangnam had transferred to Firm-2 in connection with the bribe payment for Foreign Official-1. BAHN provided a letter dated April 28, 2014, purportedly signed by the Chief Operating Officer of Keangnam, but which was in fact forged by BAHN, stating that Firm-2 had "earned" the $500,000 that Keangnam had wired to Firm-2 and that such money "shall not be refundable." BAHN had previously represented to Keangnam, however, that the $500,000 was being held in escrow at Firm-2 pending finalization of the Landmark 72 deal. Based upon the April 28, 2014 letter, Firm-2 paid BAHN approximately 45 percent, or $225,000, of the $500,000 commission. Approximately $216,666.67 of BAHN's share of the commission was paid by Firm-2 with a check dated May 15, 2014, which was made out to a company controlled by BAHN. Even after

28

BAHN received the $225,000, BAHN continued to misrepresent to Keangnam that Firm-2 held the entire $500,000 "in escrow."

58. Beginning in or about June 2014, as Keangnam's debt maturity deadlines were approaching, JOO HYUN BAHN, the defendant, began forging emails and documents from Foreign Official-1, the Fund, and other entities and individuals, which purported to show that the Fund's acquisition of Landmark 72 was progressing. BAHN sent these forged documents to Keangnam executives knowing full well that Keangnam would refrain from exploring other options for disposing of Landmark 72 if it believed that the deal with the Fund was going to close.

59. For example, on or about June 30, 2014, JOO HYUN BAHN, the defendant, sent an email to MALCOLM HARRIS, the defendant, which stated, in part:

> Today is June 30th and I have to give my clients something. We can't just sit on it for [Foreign Official-1] to send us something.
>
> Therefore, in order to buy time, I am going to 'mock-up' a letter in [Foreign Official-1's] name containing no other information than what he has already given us via email. . . .
>
> I'm going to have it mocked up as [Foreign Official-1's] sending the letter to [Firm-2] and I'll just forward it to my client so that they can show it to their creditors.

BAHN then emailed to HARRIS a draft of a letter on purported letterhead of the Fund and bearing the name, purported

29

signature, and contact information for Foreign Official-1. The
letter, which was addressed to BAHN and Firm-2, stated, in part:
"As per your request, this letter will fully demonstrate [the
Fund's] . . . intention to acquire [Landmark 72] from your
client, [Keangnam] . . . to satisfy your client's status report
requirement to its creditors."

        60.   Later that day, JOO HYUN BAHN, the defendant,
drafted and forwarded a fake email, purportedly from Foreign
Official-1, attaching the above-described "mocked-up" letter to
BAN KI SANG, the defendant, and another executive at Keangnam.
Above the forwarded email, BAHN wrote: "Attached is the official
document from [the Fund]." In reliance upon this forged letter,
and as BAHN well knew, Keangnam sought an extension of its debt
maturities from its creditors, for which it incurred substantial
loan extension fees.

        61.   On or about January 5, 2015, JOO HYUN BAHN, the
defendant, informed MALCOLM HARRIS, the defendant, that
Keangnam's lead creditor had taken control of the company as of
January 1 and had given Firm-2 and BAHN until on or about
February 15, 2015, to close the Landmark 72 deal with the Fund.
BAHN told HARRIS that Keangnam had demanded that Firm-2 return
the $500,000 that Keangnam had wired to Firm-2 in or about April
2014, approximately 45 percent of which BAHN had already
fraudulently caused Firm-2 to pay to BAHN.

                                30

62.   In furtherance of the scheme to defraud Keangnam
and its creditors, on or about January 13, 2015, JOO HYUN BAHN,
the defendant, emailed a bank confirmation letter purportedly
signed by the manager of a branch of a bank located in London,
England ("Bank-1"), but which was in fact forged by BAHN (the
"Forged Bank Letter"), to Keangnam.  The Forged Bank Letter
purported to confirm that the Fund had opened an account at
Bank-1 for the purpose of acquiring Landmark 72 and that the
account had on deposit more than $800 million.  BAHN sent the
Forged Bank Letter to Keangnam to convince his client that the
Fund was getting close to closing on its acquisition of Landmark
72.   In truth, Bank-1 never issued the Forged Bank Letter and
the Fund never had any such account at Bank-1.

63.   In furtherance of the scheme to defraud Keangnam
and its creditors, on or about January 28, 2015, JOO HYUN BAHN,
the defendant, registered a fake domain name for an entity
related to the Fund and created a fake email address associated
with that domain name for Foreign Official-1.  The next day,
BAHN used this fake email account to send an email that appeared
to have been sent by Foreign Official-1 to BAHN himself.  BAHN
then forwarded this forged email to Keangnam.  The email falsely
stated, among other things, that the Fund had submitted
Keangnam's proposed Landmark 72 sales contract to the Fund's law
firm in London, England, for review.  In reality, the Fund had

31

not retained such law firm and was not considering the Landmark 72 contract. Thereafter, BAHN continued to use the fake email account to send additional forged emails to Keangnam, which purported to be from Foreign Official-1 and bore Foreign Official-1's name.

64. JOO HYUN BAHN, the defendant, engaged in the scheme to defraud Keangnam and its creditors notwithstanding his recognition of the importance of the Landmark 72 deal to Keangnam's viability as a company, as well as to Keangnam's creditors. As BAHN wrote in an email to MALCOLM HARRIS, the defendant, on or about December 14, 2014: "We have the life of an entire firm and the lives of almost 1,000 employees in our hands. They need the liquidity from this deal to stay afloat." Similarly, on or about March 10, 2015, BAHN wrote to HARRIS: "[M]y client [Keangnam] is in jeopardy of financial meltdown and they have till end of March to cure. In all seriousness, they really will blame [the Fund] for denying them of other opportunities to sell Landmark 72 due to [the Fund's] promises that were made through us." Nevertheless, BAHN continued to lie to Keangnam and its creditors regarding the status of the Fund's purported acquisition of Landmark 72 through at least May 2015. Ultimately, when Keangnam failed to sell or refinance Landmark 72, the company was forced to enter court receivership in South Korea.

32

## COUNT TEN
(Wire Fraud)

The Grand Jury further charges:

65.    The allegations set forth in paragraphs 1 through 32, 36, 44 through 47, and 54 through 64 of this Indictment are repeated and realleged as if fully set forth herein.

66.    From in or about March 2013 through in or about May 2015, in the Southern District of New York and elsewhere, JOO HYUN BAHN, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds, to wit, BAHN used and caused to be used interstate and international wires in furtherance of a scheme to retain BAHN's exclusive right to broker the sale of Landmark 72 and to steal approximately $225,000 from Keangnam.

(Title 18, United States Code, Sections 1343 and 2.)

33

## COUNT ELEVEN
(Aggravated Identity Theft)

The Grand Jury further charges:

67. The allegations set forth in paragraphs 1 through 32, 36, 44 through 47, and 54 through 64 of this Indictment are repeated and realleged as if fully set forth herein.

68. From in or about March 2013 through in or about May 2015, in the Southern District of New York and elsewhere, JOO HYUN BAHN, the defendant, willfully and knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, BAHN transferred, possessed and used, without lawful authority, a means of identification, including the name, of Foreign Official-1 in furtherance of the wire fraud scheme charged in Count Ten of this Indictment.

(Title 18, United States Code, Sections 1028A(a)(1),
1028A(c)(5) and 2.)

## COUNT TWELVE
(Money Laundering)

The Grand Jury further charges:

69. The allegations set forth in paragraphs 1 through 32, 36, 44 through 47, and 54 through 64 of this Indictment are repeated and realleged as if fully set forth herein.

34

70.   From in or about April 2014 through in or about
May 2014, in the Southern District of New York and elsewhere,
JOO HYUN BAHN, the defendant, in an offense taking place in the
United States, knowingly and willfully engaged in and attempted
to engage in monetary transactions in criminally derived
property that was of a value greater than $10,000, to wit,
payments of funds in excess of $10,000 from Firm-2 to a bank
account under BAHN's control, and from that bank account to
other locations, such property having been derived from a
specified unlawful activity, to wit, proceeds from the wire
fraud scheme charged in Count Ten of this Indictment.

(Title 18, United States Code, Sections 1957(a) and 2).

### FIRST FORFEITURE ALLEGATION

71.   As a result of committing one or more of the FCPA
offenses alleged in Counts One through Four of this Indictment,
JOO HYUN BAHN and BAN KI SANG, the defendants, shall forfeit to
the United States, pursuant to Title 18, United States Code,
Section 981(a)(1)(C), and Title 28, United States Code, Section
2461, all property, real and personal, which constitutes or is
derived from proceeds traceable to such violations.

### SECOND FORFEITURE ALLEGATION

72.   As a result of committing the wire fraud offenses
alleged in Counts Seven and Ten of this Indictment, JOO HYUN
BAHN, the defendant (as to the offense alleged in Count Ten) and

35

MALCOLM HARRIS, the defendant (as to the offense alleged in Count Seven), shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of such offenses.

## THIRD FORFEITURE ALLEGATION

73.   As a result of committing the money laundering offenses alleged in Counts Five, Six, Nine, and Twelve of this Indictment, JOO HYUN BAHN, the defendant (as to the offenses alleged in Counts Five, Six, and Twelve), BAN KI SANG, the defendant (as to the offenses alleged in Counts Five and Six), and MALCOLM HARRIS, the defendant (as to the offense alleged in Count Nine), shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in the such offenses, and any property traceable to such property, and, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all property, real or personal, which constitutes or is derived from proceeds traceable to the commission of such offenses.

## Substitute Asset Provision

74.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

36

a.    cannot be located upon the exercise of due
diligence;

b.    has been transferred or sold to, or
deposited with, a third party;

c.    has been placed beyond the jurisdiction of
the court;

d.    has been substantially diminished in value;
or

e.    has been commingled with other property
which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18,
United States Code, Sections 981 and 982, Title 21, United
States Code, Section 853(p), and Title 28, United States Code,

37

Section 2461, to seek forfeiture of any other property of the

defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981 and 982;
Title 21, United States Code, Sections 853; and
Title 28, United States Code, Section 2461.)

FOREPERSON

PREET BHARARA
United States Attorney
Southern District of New York

ANDREW WEISSMANN
Chief, Fraud Section
Criminal Division
U.S. Department of Justice

38

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JOO HYUN BAHN,
a/k/a "Dennis Bahn,"
BAN KI SANG, and
MALCOLM HARRIS,

Defendants.

## SEALED INDICTMENT

16 Cr. _____

(15 U.S.C. § 78dd-2;
18 U.S.C. §§ 2, 371, 1028A, 1343,
1956 and 1957.)

PREET BHARARA
United States Attorney.

ANDREW WEISSMANN
Chief, Fraud Section
Criminal Division
U.S. Department of Justice.

A TRUE BILL

_____
Foreperson.

12/5/16 - Filed Sealed Indictment.
ac       alw issued.   J Francis
                           USMJ