```
        I15AABAHP                       Plea
```

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                              16 CR 831-1 (ER)

5    JOO HYUN BAHN,

6                   Defendant.

7    ------------------------------x

8                                             New York, N.Y.
                                              January 5, 2018
9                                             10:00 a.m.

10
     Before:
11
                        HON. EDGARDO RAMOS,
12
                                              District Judge
13

14                          APPEARANCES

15   GEOFFREY S. BERMAN
          Interim United States Attorney for the
16        Southern District of New York
     DANIEL S. NOBLE
17   DENNIS R. KIHM
          Assistant United States Attorneys
18
     JULIA GATTO
19        Attorney for Defendant Bahn

20

21   ALSO PRESENT:
     Sean Thomas-Moore, Special Agent FBI
22   Michael Chang-Frieden, Paralegal

23

24

25

```

1          (Case called)

2          MR. NOBLE:  Daniel Noble and Dennis Kihm for the

3   government.  With us at counsel table are Special Agent Sean

4   Thomas-Moore of the FBI and our paralegal Michael

5   Chang-Frieden.

6          MS. GATTO:  Federal Defenders of New York, by Julia

7   Gatto, for Mr. Bahn.  With me at counsel table are Susha Harau

8   and Ryan Matrick Maroney, who are assisting the Federal

9   Defenders.

10          THE COURT:  Good morning to you, all.

11          Mr. Noble, what are we doing this morning?

12          MR. NOBLE:  It is the government's understanding,

13   based on our conversation with defense counsel, that Mr. Bahn

14   intends to change his plea to guilty to Counts One and Four of

15   the indictment pursuant to plea agreement that the parties have

16   reached, a copy of which has been passed up to your Honor and

17   was previously sent to your chambers.

18          THE COURT:  Ms. Gatto?

19          MS. GATTO:  That's correct, your Honor.

20          THE COURT:  Very well.

21          How do I pronounce your last name?  Is it Bahn?

22          MS. GATTO:  Yes, Bahn.

23          THE COURT:  Your attorney has informed me that you

24   wish to enter a plea of guilty.  I'm happy to take your plea.

25   However, before I do that, I need to ask you a series of

```
1    questions.  I'm trying to determine in the first instance that
2    you know what is happening here today and the consequences of
3    taking a plea, and the other thing that I'm trying to determine
4    is whether you are in fact guilty of the crimes to which you
5    wish to plead guilty.
6              As I ask you these questions, it is vitally important
7    that you be absolutely truthful.  So I'm going to have you
8    placed under oath.
9              (Defendant sworn)
10             THE COURT:  You may be seated and you may remain
11   seated throughout this proceeding.
12             Mr. Bahn, you are now under oath.  Do you understand
13   that if you answer any of my questions falsely, your answers
14   could be used against you in a prosecution for perjury or for
15   making a false statement?
16             THE DEFENDANT:  Yes, your Honor.
17             THE COURT:  As I indicated, I am going to ask you a
18   series of questions.  If I ask you a question and you don't
19   understand it, simply let me know and I'll rephrase it.  Or if
20   I ask you a question and you wish to speak with Ms. Gatto
21   before you answer it, let me know that.
22             THE DEFENDANT:  Yes, your Honor.
23             THE COURT:  Sir, can you please tell me your full
24   name.
25             MR. SKWRAO:  Joo Hyun Bahn.
```

1           THE COURT:  How old are you?

2           THE DEFENDANT:  39 years old.

3           THE COURT:  How far did you get in school?

4           THE DEFENDANT:  I have a master's degree.

5           THE COURT:  In what?

6           THE DEFENDANT:  Real estate finance and investments.

7           THE COURT:  Sir, are you able to read and write in

8    English?

9           THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Sir, are you now or have you recently been

11   under the care of a doctor or psychiatrist?

12          THE DEFENDANT:  No, I haven't.

13          THE COURT:  Have you ever been treated or hospitalized

14   for any mental illness or any type of addiction, including drug

15   or alcohol addiction?

16          THE DEFENDANT:  No, I have not.

17          THE COURT:  Sir, in the past 24 hours have you taken

18   any drugs, medicine or pills or have you consumed any alcohol?

19          THE DEFENDANT:  No, I haven't.

20          THE COURT:  Is your mind clear today?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  Mr. Bahn, are you feeling well enough to

23   proceed and to understand what is going on here today?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  Mr. Bahn, Ms. Gatto has informed me that

1    you wish to enter a plea of guilty.  Is that correct?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Sir, have you had a full opportunity to

4    discuss your case with her, including any possible defenses

5    that you might have?

6              THE DEFENDANT:  Yes, I have.

7              THE COURT:  Mr. Bahn, are you satisfied and have you

8    had a full opportunity to discuss with Ms. Gatto the

9    consequences of entering a plea of guilty?

10             THE DEFENDANT:  Yes, I have.

11             THE COURT:  Are you satisfied with her representation

12   of you?

13             THE DEFENDANT:  Yes, I am.

14             THE COURT:  Does either counsel have any doubt as to

15   Mr. Bahn's competence to enter into a guilty plea at this time?

16             MR. NOBLE:  No, your Honor.

17             MS. GATTO:  No, your Honor.

18             THE COURT:  On the basis of Mr. Bahn's responses to my

19   questions and my observations of his demeanor, I find that he

20   is fully competent to enter an informed guilty plea at this

21   time.

22             The next series of questions that we need to go over,

23   Mr. Bahn, involve the rights that you are giving up by pleading

24   guilty.  So, again, please listen very carefully.

25             First, you have the right to be represented by an

1    attorney at trial and at every other stage of the proceeding.

2    If you could not afford an attorney, an attorney would be

3    appointed to represent you without cost to you.

4              Do you understand that?

5              THE JUROR:  Yes, your Honor.

6              THE COURT:  You have a right to a speedy and public

7    trial by a jury on the charges against you which are contained

8    in the indictment.

9              Do you understand?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  At trial, you would be presumed innocent

12   and the government would be required to prove you guilty by

13   competent evidence beyond a reasonable doubt before you could

14   be found guilty; you would not have to prove that you were

15   innocent at trial.

16             Do you understand?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  If there were a jury trial, the jury would

19   be composed of 12 people selected from this district and all 12

20   would have to agree unanimously that you were guilty before you

21   could be found guilty.

22             Do you understand?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  At trial, you would have the right to see

25   and hear all of the witnesses against you and your attorney

1    could cross-examine them.  Your attorney could object to the

2    government's evidence and offer evidence on your behalf.  You

3    would also have the right to have subpoenas issued to compel

4    witnesses to come to court to testify in your defense.

5             Do you understand that?

6             THE DEFENDANT:  Yes, your Honor.

7             THE COURT:  At trial, you would have the right to

8    testify if you wanted to, but no one could force you to

9    testify, and if you chose not to testify, I would tell the jury

10   that it could not hold that against you.

11            Do you understand?

12            THE DEFENDANT:  Yes, your Honor.

13            THE COURT:  If you were convicted at trial, you would

14   have a right to appeal that verdict.

15            Do you understand?

16            THE DEFENDANT:  Yes, your Honor.

17            THE COURT:  Do you also understand that by entering a

18   plea of guilty here today you are giving up all of the rights

19   that I've just described, except for your right to counsel, and

20   you would be found guilty based only on your plea of guilty?

21            THE DEFENDANT:  Yes, your Honor.

22            THE COURT:  And, Mr. Bahn, do you understand that you

23   can change your mind right now for any reason and decide not to

24   enter a guilty plea?

25            THE DEFENDANT:  Yes, your Honor.

1    THE COURT:  Mr. Bahn, have you received a copy of the

2  indictment?

3    THE DEFENDANT:  Yes, I have.

4    THE COURT:  Have you read the indictment?

5    THE DEFENDANT:  Yes.

6    THE COURT:  Have you discussed the indictment with

7  your attorney?

8    THE DEFENDANT:  Yes, I did.

9    THE COURT:  Do you understand that you are charged in

10  Count One of that indictment with a violation of Title 1 of the

11  United States Code, Section 371, and that you are alleged to

12  have conspired to violate the Foreign and Corrupt Practices

13  Act?

14    THE DEFENDANT:  Yes, I am.

15    THE COURT:  Do you understand that you are charged in

16  Count Four of that indictment with actually violating the

17  Foreign and Corrupt Practices Act, in violation of Title 15 of

18  the United States Code, Section 78dd-2?

19    THE DEFENDANT:  Yes, I do.

20    THE COURT:  Mr. Noble, would you please put on the

21  record the elements of those offenses.

22    MR. NOBLE:  Yes, your Honor.

23    With respect to Count One, the conspiracy count, the

24  government would have to prove the following three elements

25  beyond a reasonable doubt:

First, the existence of a conspiracy to violate the Foreign and Corrupt Practices Act; second, that the defendant willfully and knowingly joined the conspiracy with the intent to further the conspiracy; and third, that a coconspirator made at least one or conducted at least one overt act in furtherance of the conspiracy.

With respect to Count Four, the substantive FCPA violation, the government would have to prove the following elements beyond a reasonable doubt:

First, that the defendant was a domestic concern or an officer, director, employee, or agent of such domestic concern or any stockholder thereof acting on behalf of a such domestic concern, or that the defendant aided and abetted a domestic concern;

Second, that the defendant acted corruptly and willfully;

Third, that the defendant made use of the mails or any means or instrumentality of interstate commerce in furtherance of an unlawful act under the statute, namely, an offer, payment, promise to pay, or authorization of the payment of money for anything of value, or aided and abetted another to do the same;

Fourth, that the defendant offered, paid, promised to pay, or authorized the payment of money or a gift or anything of value;

1          Fifth, that that offer, promise to pay, or

2     authorization of payment of money or anything of value was

3     either, A, to a foreign official or, B, to any person while the

4     defendant knew that all or a portion of that payment would be

5     offered, given, or promised, directly or indirectly, to a

6     foreign official as that term is defined under the FCPA.

7          Sixth, that the payment was intended for one of three

8     purposes relevant to this action:  A, to influence any act or

9     decision of a foreign public official in his or her official

10    capacity; B, to induce such foreign official to do, or omit to

11    do, any act in violation of the lawful duty of such foreign

12    official; and, C, to secure any improper advantage; and

13         Seventh and finally, that the payment was to assist

14    the domestic concern in obtaining or retaining business for or

15    with, or directing business to, any person.

16         In addition to the foregoing, the government would

17    have to prove that venue lies here in the Southern District of

18    New York by a preponderance of the evidence.

19         THE COURT:  Thank you, Mr. Noble.

20         Mr. Bahn, did you hear what the prosecutor said?

21         THE DEFENDANT:  Yes, I have, your Honor.

22         THE COURT:  Sir, do you understand that if you did not

23    plead guilty to these offenses today, at a trial the government

24    would have prove each and every one of those elements beyond a

25    reasonable doubt?

1        THE DEFENDANT:  Yes, I understand.

2        THE COURT:  Mr. Bahn, did you discuss with Ms. Gatto

3  the possible punishment that you face if you were to plead

4  guilty to Counts One and Four?

5        THE DEFENDANT:  Yes, we did.

6        THE COURT:  Mr. Noble, am I correct that both counts

7  carry the same punishment?

8        MR. NOBLE:  That's correct, your Honor.

9        THE COURT:  So, Mr. Bahn, did you discuss with

10  Ms. Gatto that if you were to plead guilty to Counts One or

11  Four, you would face a maximum term of imprisonment of five

12  years on each of those counts?

13        THE DEFENDANT:  Yes, I understand.

14        THE COURT:  You understand that you face a maximum

15  term of supervised release of three years on each of those

16  counts?

17        THE DEFENDANT:  Yes, I understand.

18        THE COURT:  Do you also understand that there are, in

19  addition, financial penalties, including a $100 mandatory

20  special assessment that I must impose on each count and a fine

21  that I could impose on each count that could be as high as

22  either $250,000 or twice the gross gain from the offense or

23  twice the gross loss to victims of the offense.

24        Do you understand that?

25        THE DEFENDANT:  Yes, I understand, your Honor.

```
1              THE COURT:  And do you understand that because you're
2     pleading guilty to two counts, I have the ability to impose
3     these sentences either concurrently, meaning that you would
4     serve both sentences on both counts at the same time, or
5     consecutively, meaning that I could have you serve those
6     sentences one after the other?
7              THE DEFENDANT:  Yes, I understand.
8              THE COURT:  Therefore, do you understand that because
9     of that maximum term of imprisonment that you face, if you were
10    to plead guilty to both counts, is ten years?
11             THE DEFENDANT:  Yes, I understand, your Honor.
12             THE COURT:  And the maximum supervised -- rather, the
13    maximum fine is a $200 mandatory assessment.
14             Do you understand that?
15             THE DEFENDANT:  Yes, I do.
16             THE COURT:  Sir, I used phrase supervised release.  Do
17    you understand that supervised release means that you will be
18    subject to monitoring and supervision when you are released
19    from prison?
20             THE DEFENDANT:  Yes, I understand.
21             THE COURT:  And there are terms and conditions of
22    supervised release with which you must comply, and if you do
23    not comply with them, you could be returned to prison without a
24    jury trial.
25             Do you understand?
```

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  And do you understand that if you violate

3    the terms and conditions of supervised release and are returned

4    to prison, that you will not receive credit for time previously

5    served in prison or time previously served on supervised

6    release?

7          THE DEFENDANT:  Yes, I do.

8          THE COURT:  Sir, do you understand as part of your

9    sentence I could also order restitution or that you pay

10   restitution to any person injured as a result of your conduct?

11         THE DEFENDANT:  Yes, I do, your Honor.

12         THE COURT:  And, Mr. Bahn, do you understand that if I

13   accept your guilty plea, that determination may deprive you of

14   certain valuable civil rights, such as the right to vote, the

15   right to hold public office, the right to serve on a jury, the

16   right to possess any kind of firearm, and the right to hold

17   certain professional licenses?

18         THE DEFENDANT:  Yes, I do, your Honor.

19         THE COURT:  Mr. Bahn, are you a United States citizen?

20         THE DEFENDANT:  No, I'm not.

21         THE COURT:  Of what country are you a citizen?

22         THE DEFENDANT:  I'm from South Korea.

23         THE COURT:  Ms. Gatto, have you advised Mr. Bahn about

24   the possible immigration consequences of entering a guilty

25   plea?

1          MS. GATTO:  I have, your Honor.

2          THE COURT:  Mr. Bahn, has your lawyer advised you as

3   to the possible immigration consequences of entering a plea?

4          THE DEFENDANT:  Yes, she has.

5          THE COURT:  So do you understand that there could be

6   adverse immigration consequences, including possible

7   deportation if you were to plead guilty today?

8          THE DEFENDANT:  Yes, I do understand.

9          THE COURT:  Sir, do you understand that if there are

10  adverse immigration consequences as a result of your plea, you

11  will not be able to withdraw your plea or appeal or otherwise

12  challenge your conviction on the basis of those adverse

13  immigration consequences?

14         THE DEFENDANT:  Yes, I understand.

15         THE COURT:  Sir, do you understand that there is a

16  possibility that you will be deported from the United States

17  after you serve your sentence?

18         THE DEFENDANT:  Yes, I do, your Honor.

19         THE COURT:  And do you understand that if for some

20  reason you are not deported after serving your sentence, you

21  will still be sentenced to supervised release?

22         THE DEFENDANT:  Yes, I do.

23         THE COURT:  Sir, do you understand that if you are

24  deported, by returning to the United States during your period

25  of supervised release without the permission of the Secretary

1    of the United States Department of Homeland Security would not

2    only be a separate crime, but also a violation of the

3    conditions of supervised release?

4              THE DEFENDANT:  Yes, I do.

5              THE COURT:  Sir, do you understand that if you have

6    begun the process of becoming a naturalized U.S. citizen, the

7    fact of your conviction could adversely affect that process?

8              THE DEFENDANT:  Yes, I do.

9              THE COURT:  Do you further understand that the fact of

10   your conviction could adversely affect any application you may

11   make in the future to re-enter the United States?

12             THE DEFENDANT:  Yes, I do.

13             THE COURT:  Now the next series of questions that we

14   need to discuss, Mr. Bahn, involve the sentencing guidelines.

15   So let me begin by asking you, do you understand that there are

16   sentencing guidelines that I must consider in determining the

17   appropriate sentence in your case?

18             THE DEFENDANT:  Yes, I do.

19             THE COURT:  Have you spoken with Ms. Gatto about how

20   the guidelines apply to your case?

21             THE DEFENDANT:  Yes, we have.

22             THE COURT:  Sir, do you understand that I have to

23   calculate a guideline range and then consider that range in

24   determining what your sentence will be?

25             THE DEFENDANT:  Yes, I do.

1          THE COURT:  Do you also understand that I will not be

2     able to determine that range until after a probation report or

3     a presentence report has been drafted by the U.S. probation

4     office and both you and the government have had a chance to

5     review a draft of that report?

6          THE DEFENDANT:  Yes, I do.

7          THE COURT:  Do you further understand that even after

8     I calculate the guideline range, I have the ability to impose a

9     sentence that could be higher or lower than what the guidelines

10    recommend?

11         THE DEFENDANT:  Yes, I do your Honor.

12         THE COURT:  Sir, do you also understand that in

13    determining the guideline range, I also have to consider a

14    number of other factors set forth in Title 18 of the United

15    States Code, Section 3553(A), which requires me to consider,

16    among other things, you and your personal history and

17    characteristics and about the offense in determining the

18    appropriate sentence in your case?

19         THE DEFENDANT:  Yes, I do, your Honor.

20         THE COURT:  So even after I determine the appropriate

21    guideline range, I must also consider those other factors and,

22    again, might settle on a sentence that is either higher or

23    lower than what the guidelines recommend.

24         Do you understand that?

25         THE DEFENDANT:  Yes, I do, your Honor.

1          THE COURT:  Sir, do you understand that if your

2    attorney or anyone else has attempted to estimate or predict

3    what your sentence will be, their estimate or prediction could

4    be wrong?

5          THE DEFENDANT:  Yes, I do, your Honor.

6          THE COURT:  Sir, while it is perfectly appropriate for

7    you and your attorneys to have discussed how the sentence will

8    be calculated, no one could give you any assurance of what your

9    sentence will be.

10          Do you understand that?

11          THE DEFENDANT:  Yes, I do your Honor.

12          THE COURT:  Mr. Bahn, I say all of this to you because

13    you need to understand that if your sentence is different from

14    what your attorney or anyone else told you it might be or if it

15    is different from what you expect or even if it is different

16    from what is contained in your plea agreement, the government

17    you will still be bound by your guilty plea and you will not be

18    able to withdraw your guilty plea.

19          Do you understand that?

20          THE DEFENDANT:  Yes, I do, your Honor.

21          THE COURT:  Sir, do you understand that if you are

22    sentenced to prison, there is no parole in the federal system

23    and you will not be released early on parole?

24          THE DEFENDANT:  Yes, I do.

25          THE COURT:  The next series of questions involve your

1    agreement with the government.  I have been given a copy of the

2    original of an agreement.  It's dated January 5, 2018.  It is a

3    six-page document.

4              On page six, there are a series of signatures,

5    including one that purports to be yours, signed today.  I am

6    going to hold this up.  Can you see this from where you are

7    seated?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Is this your signature on page six of that

10   agreement?

11             THE DEFENDANT:  Yes, it is.

12             THE COURT:  This document will be marked Court Exhibit

13   No. 1.

14             Now, Mr. Bahn, did you read this agreement before you

15   signed it?

16             THE DEFENDANT:  Yes, I did, your Honor.

17             THE COURT:  Did you discuss it with your attorney

18   before you signed it?

19             THE DEFENDANT:  Yes, we have.

20             THE COURT:  Did you fully understand the agreement

21   when you signed it?

22             THE DEFENDANT:  Yes, I do.

23             THE COURT:  Does this agreement include your

24   understanding of the entire agreement between you and the

25   government?

1        THE DEFENDANT:  Yes.

2        THE COURT:  Mr. Bahn, is there any other promise or is

3    there any other agreement about your plea or your sentence that

4    is not contained in this document?

5        THE DEFENDANT:  No, your Honor.

6        THE COURT:  Did anyone threaten or force to you enter

7    into this agreement?

8        THE DEFENDANT:  No.

9        THE COURT:  Other than what is in the agreement, has

10   anyone promised you anything or offered you anything in order

11   to plead guilty or to enter into this agreement?

12       THE DEFENDANT:  No.

13       THE COURT:  Mr. Bahn, has anyone made you a promise as

14   to what your sentence will be?

15       THE DEFENDANT:  No.

16       THE COURT:  Sir, there is a stipulation in the

17   agreement concerning the sentencing guidelines.  I believe it's

18   call a stipulated guideline range.

19       Do you understand that that stipulation binds you and

20   it binds the government, but it does not bind me, and I have

21   still got to make any own calculation as to what the guidelines

22   should be.

23       Do you understand that?

24       THE DEFENDANT:  Yes, I do.

25       THE COURT:  Do you understand that under certain

1    circumstances both you and the government have a right to

2    appeal any sentence that I might impose?

3              THE DEFENDANT:  Yes, I do.

4              THE COURT:  However, there is a stipulation in the

5    agreement in which you agree that you will not appeal any

6    sentence that is within or below the applicable sentencing

7    guideline range.

8              THE DEFENDANT:  Yes, I do.

9              THE COURT:  Do you understand that that essentially

10   severely limits your ability to appeal any sentence that I

11   might impose or any sentence that I impose within or below the

12   stipulated guideline range?

13             THE DEFENDANT:  Yes, I do.

14             THE COURT:  Mr. Noble, would you please summarize what

15   the government would expect to prove if this case were to go to

16   trial.

17             MR. NOBLE:  Yes, your Honor.

18             If this case were to proceed to trial, the

19   government's evidence would consist of the following and show

20   the following facts:

21             Testimony and documentary evidence that at all

22   relevant times Mr. Bahn was a legal permanent resident of the

23   United States and a resident of New Jersey, and worked as a

24   real estate broker in Manhattan; second, testimony of at least

25   one cooperating witness about Mr. Bahn's participation with

1    others in the scheme to bribe a foreign official in order to

2    use that foreign official's influence to induce a foreign

3    sovereign wealth fund to purchase the Landmark 72 building

4    complex in Vietnam from Bahn's client Keangnam Enterprises.

5           Such testimony would also be corroborated by, among

6    other things, documents, bank records and e-mails and text

7    messages, including e-mails and text messages recovered from

8    Mr. Bahn's work and personal e-mail accounts.

9           Third, testimony and documentary evidence that the

10   foreign official, who Mr. Bahn and his co-conspirators

11   attempted to bribe, was in fact an executive of a state-owned

12   foreign sovereign wealth fund which was an instrumentality of

13   that foreign state; and

14          Finally, bank records and other documents reflecting

15   wire transfers of funds from Keangnam's bank account in South

16   Korea to the bank account of Mr. Bahn's real estate firm for

17   which he worked in Manhattan, which Mr. Bahn used to obtain a

18   loan that he used to attempt to pay an initial $500,000 bribe,

19   up-front bribe to the foreign official involved in the scheme.

20          THE COURT:  Thank you.

21          Mr. Bahn, did you hear what the prosecutor said?

22          THE DEFENDANT:  Yes, I have.

23          THE COURT:  Sir, have you clearly understood

24   everything that has happened here today so far?

25          THE DEFENDANT:  Yes, I do, your Honor.

1       THE COURT:  Mr. Bahn, will you now please tell me in

2   your own words what it is that you did that makes you guilty of

3   the crimes to which you are pleading guilty?

4       THE DEFENDANT:  Sure.

5       THE COURT:  Are you about to read something?

6       THE DEFENDANT:  Yes.

7       THE COURT:  I just want to make sure that when you

8   read, you read slowly and clearly so I can hear you and the

9   court reporter can take down everything you say.  OK?

10       THE DEFENDANT:  Yes, your Honor.

11       From February 2014 to May 2015, I facilitated what I

12   thought was a bribe payment being paid to whom I thought was a

13   foreign official of country of @Qatar.  I had been told that in

14   his official capacity were any official made decisions

15   regarding how to allocate @Qatar's sovereign wealth fund's

16   assets.

17       At the time I was one of several real estate brokers

18   working for a Korean company that was trying to sell a property

19   located in Vietnam.

20       I thought the bribe payment was being made to

21   corruptly influence the foreign official.  In exchange for the

22   bribe payment, and acting in his official capacity, the foreign

23   official was supposed to encourage Cutters' sovereign wealth

24   fund to purchase the building.  In reality, however, there was

25   no foreign official and the bribe payment was never given to a

1    foreign official.  Instead, Malcolm Harris stole the money.

2              In an effort to facilitate what I thought was the

3    bribe payment, I sent e-mails and texts to others involved.

4    Some of these communications were sent from my office located

5    in Manhattan.

6              I'm a national of South Korea.  I'm a lawful permanent

7    resident of the United States.

8              Between February 2014 and May 2015, I lived in New

9    Jersey.

10             As part of these efforts, between February 2014 and

11   May 2015, I agreed with others to facilitate the bribe and

12   committed at least one act in furtherance of that agreement by

13   sending texts and e-mails.

14             That's all, sir.

15             THE COURT:  Mr. Bahn, when you did these things, did

16   you know that what you were doing was wrong and against the

17   law?

18             MS. GATTO:  Your Honor, I don't think that that's

19   necessarily an element of this offense, although I know that

20   Mr. Bahn can allocute that he knew what he was doing was a bad

21   act.

22             THE COURT:  OK.  Did you know that what you were doing

23   was wrong?

24             THE DEFENDANT:  Yes.  I knew that what I was doing was

25   a bad act.

1          THE COURT:  Did anyone threaten you or force you to do
2   those things?
3          THE DEFENDANT:  No.
4          THE COURT:  Does either counsel wish me to make any
5   further inquiries?
6          MR. NOBLE:  Judge, the government would just proffer
7   with respect to the substantive FCPA violation of Count Four
8   that the attempted bribe payment was in the amount of $500,000.
9   It was a check that was made out to Muse Creative Consulting,
10  LLC, which was Malcolm Harris' company.
11         The government would further proffer that that check,
12  which Mr. Bahn gave to Mr. Harris, was in fact deposited into a
13  bank account here in Manhattan and cleared through a bank in
14  Virginia.
15         That's just a proffer on the interstate commerce
16  element, to the extent it wasn't already covered by Mr. Bahn's
17  what we believe, very thorough allocution.
18         THE COURT:  Very well.
19         Ms. Gatto, do you know of any valid defense that would
20  prevail at trial or any reason why Mr. Bahn should not be
21  permitted to plead guilty?
22         MS. GATTO:  I see no why reason Mr. Bahn should not be
23  permitted to plead guilty.
24         THE COURT:  Ms. Gatto, do you believe that there is an
25  adequate factual basis to support the plea?

1          MR. SKWRAO:  I do.

2          THE COURT:  Mr. Noble, is there an adequate factual

3    basis to support the plea of guilty?

4          MR. NOBLE:  Yes, your Honor.

5          THE COURT:  Very well.

6          Mr. Bahn, how do you now plead to the charge in Count

7    One of the indictment?  Guilty or not guilty?

8          THE DEFENDANT:  Guilty, your Honor.

9          THE COURT:  And, sir, how do you now plead to the

10   charge in Count Four of the indictment.  Guilty or not guilty?

11         THE DEFENDANT:  Guilty, your Honor.

12         THE COURT:  Are you in fact guilty of those charges?

13         THE DEFENDANT:  Yes, I am, your Honor.

14         THE COURT:  Mr. Bahn, are you pleading guilty

15   voluntarily and of your own free will?

16         THE DEFENDANT:  Yes, I am.

17         THE COURT:  Are there forfeiture allegations with

18   respect to both of those counts?

19         MR. NOBLE:  There are, your Honor.

20         THE COURT:  Mr. Bahn, do you admit to the forfeiture

21   allegations in the indictment?

22         THE DEFENDANT:  Yes, I admit, your Honor.

23         THE COURT:  Very well.  Mr. Bahn, because you

24   acknowledge that you are in fact guilty as charged in Counts

25   One and Four of the indictment and because I find that you know

your rights and are waiving them knowingly and voluntarily with

an understanding of the consequences of your plea, including

the potential sentence that may be imposed, I accept your

guilty plea and find you guilty of the charges in Counts One

and Four.

I will now direct that a presentence investigation be

conducted by the probation office and that a presentence report

be prepared.

You will be interviewed as part of that process, Mr.

Bahn.  You can and should have your lawyer with you during that

interview.

The presentence report will be a very important part

in my decision as to what your sentence will be.  You and your

attorneys will have an opportunity to examine a draft of that

report.  It is very important that you read it very carefully

and bring any mistakes or discrepancies that you may find

therein to my attention.  Both you and your lawyer will also

have the right to speak on your behalf before sentence.

Is there a date for sentence?

COURTROOM DEPUTY:  Yes.  April 13, 2018 at 11 a.m.

MR. NOBLE:  Judge, if I may, if we could ask for a

date deeper into the year.  I was thinking of June, if that was

OK.

THE COURT:  Any objection?

MR. NOBLE:  No, your Honor.

1          COURTROOM DEPUTY:  June 29 at 11 a.m.

2          MS. GATTO:  Thank you, your Honor.

3          THE COURT:  OK.  Mr. Noble, is there anything more

4    than we need to do today?

5          MR. NOBLE:  No, your Honor, other than the government

6    would move to continue the same bail conditions that Mr. Bahn,

7    as far as we know, has been in full compliance with, through

8    the date of sentencing.

9          THE COURT:  I take it there is no objection.

10          MS. GATTO:  No objection, your Honor.

11          THE COURT:  The bail conditions will be continued.

12          Is there anything more?  Ms. Gatto.

13          MS. GATTO:  Nothing.  Thank you, your Honor.

14          MR. NOBLE:  Nothing from the government.  Thank you.

15          (Adjourned)

16

17

18

19

20

21

22

23

24

25